UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. ) Cr. No. 05-30038-MAP
)
DAVID RUIZ )

GOVERNMENT'S OPPOSITION
TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

Now comes the United States of America by its undersigned attorney, and moves that this Court deny the defendant's Motion for Departure Downward from Sentencing Guidelines 18 U.S.C.A. USSG, §5K2.12, Duress and Coercion. The government relies on the following in support thereof.

The defendant's Motion for Downward Departure relies entirely upon his unsupported claims in an affidavit attached to his motion in which he alleges that the government's cooperating witness (CW) forced him to sell the crack cocaine which is the subject of the instant Indictment. The defendant states that he wanted to leave the Latin Kings street gang and that the CW pressured the defendant to introduce the CW to a person who would sell the CW crack cocaine. Affidavit at 2.

The defendant also states the CW forced the defendant to personally sell the crack cocaine to the CW because he did not trust the person from whom the defendant purchased the crack. Affidavit at 3.

The government disputes the defendant's version of events

1

and states that no duress or coercion was used in purchasing crack cocaine from the defendant. The government submits that the consensually recorded telephone calls and meeting between the defendant and the CW demonstrate that the defendant was very willing to sell the CW crack cocaine and that he also negotiated to sell the CW a firearm.

On October 5, 2004, the CW and defendant engaged in several telephone conversations. At approximately 11:17 am the defendant told the CW that he had two eight balls of crack which were 80% pure and that he needed to find some material to cut or dilute the crack. The defendant offered to split the proceeds with the CW if he helped prepare and sell the crack. The defendant offered to sell the two eight balls uncut for $170 each or for $120 each if they were cut. The CW asked the defendant if he had a gun to sell. The defendant said he just sold a gun three days ago and only has his own .45 caliber gun which he did not want to sell. Ruiz told the CW that he had recently used his gun to pistol whip a member of the rival NETA street gang. The defendant told the CW he would try to locate a gun for the CW.

At approximately 11:38 am on October 5, 2004, Ruiz called the CW and said he could get a .38 caliber gun for $300. The CW said that it was too expensive. Ruiz then said he was going to cut up the cocaine and sell it.

At approximately 11:47 am on the same date, the CW called

2

Ruiz and negotiated the purchase of eight balls of crack for $120 each. The defendant said he could do the deal by 3:00 pm. The CW called Ruiz back at 11:57 am and Ruiz said he was waiting for a guy to call him back. The CW called Ruiz at 12:17 pm and 12:30 pm and left messages both times because Ruiz did not pick up the phone.

On November 7, 2004, at approximately 7:58 pm the CW called Ruiz and left a voice mail message for him saying he wanted to buy crack cocaine. At 8:02 pm the CW called Ruiz again and told Ruiz he needed one eight ball. Ruiz told the CW to call back. At approximately 8:06 pm the CW called Ruiz back. Ruiz said he would sell "hard" for $120 per eight ball. Ruiz said he had to call Pote, the street name for Julio Marin, another member of the Latin Kings. The CW again spoke to Ruiz at 8:41 pm and Ruiz said that Pote could not get the crack that day. At 8:46 pm the CW called Ruiz back and they agreed to do a deal for two eight balls the next day.

On November 9, 2004, the CW called Ruiz who said he could not get the drugs until 1:00 pm. At approximately 10:41 am the CW obtained a recording device from the Gang Task Force (GTF) agents. The CW began driving at 10:41 am and after being unable to locate the defendant for a period of time, finally located him at approximately 11:33 am. The CW and the defendant then waited for the defendant's source of supply outside an apartment

building for approximately one hour. The CW and defendant engage in what appears to be friendly conversation the entire time. At approximately 12:13 pm the CW gave Ruiz money. At approximately 12:18 pm a car pulled up, Ruiz went up to the driver's side window, stayed there only briefly then walked away. Immediately after that the CW and defendant walked inside a building and the defendant gave the CW crack cocaine. The CW drove back to meet the GTF agents and gave them the drugs.

The government will play the CD's and DVD of these phone calls and meeting to rebut the defendant's anticipated testimony. The government will also have the CW available to testify that there was no duress or coercion used, if the Court believes that testimony is necessary.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
TODD E. NEWHOUSE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

Hampden, ss.                    Springfield, Massachusetts
                                April 3, 2006

I, Todd E. Newhouse, Assistant U.S. Attorney, do hereby certify that I have served, by first class mail, a copy of the foregoing, to all counsel of record.

_____
TODD E. NEWHOUSE
Assistant U.S. Attorney